UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES KIESSEL et al.,

       Plaintiffs,                        Case No. 1:09-cv-179

v.                                           HON. JANET T. NEFF

LEELANAU COUNTY SHERIFF
MICHAEL OLTERSDORF et al.,

       Defendants.
_____/

**OPINION**

Plaintiffs, former and current employees in the Leelanau County Sheriff's Office (LCSO), filed this action against defendants, alleging violations of federal and state electronic eavesdropping statutes as well as other claims under state and federal law. Pending before the Court is defendants' Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 (Dkt 180). For the following reasons, the Court determines that their motion is properly denied.

I. BACKGROUND

Plaintiffs filed this lawsuit on March 3, 2009 based on allegations of misconduct stemming from the use of a recording system installed at the LCSO from 2006 to 2008. Since then, plaintiffs have filed their Third Amended Complaint (Dkt 89), in which they allege the following nine counts:

    I.      Violation of Wire and Electronic Communications Interception Act

    II.     Fourth Amendment violation under 42 U.S.C. § 1983

    III.    First Amendment violation under 42 U.S.C. § 1983

IV. Fourteenth Amendment violation under 42 U.S.C. § 1983

V. Violation of Michigan's Wire Tapping statute

VI. Invasion of Privacy

VII. Michigan Whistleblowers' Protection Act claim

VIII. Violation of Bullard-Plawecki Employee Right to Know Act

IX. Exemplary Damages

On June 30, 2010, following discovery, defendants requested a Pre-Motion Conference, proposing to file a motion for summary judgment (Dkt 156). The Court held a Pre-Motion Conference on July 30, 2010 and subsequently issued a briefing schedule, permitting defendants to file their proposed dispositive motion (Dkt 167). Following an unsuccessful attempt to mediate their differences (Dkt 172), the parties filed their motion papers on October 22, 2010 (Dkts 180-204).[1] The Court determines that oral argument is unnecessary to resolve the four issues that defendants present. *See* W.D. Mich. LCivR 7.2(d).

The parties are scheduled to appear before the Magistrate Judge for a Settlement Conference on December 1, 2010 (Dkt 80). Barring their ability to achieve a private settlement, a Final Pretrial Conference is scheduled for January 10, 2011 and trial for February 1, 2011 (*id.*).

## II. ANALYSIS

### A. Motion Standard

A motion for summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[1] Within their Reply (Dkt 187), defendants include several requests that this Court strike certain exhibits. The Court declines, without a proper motion before it, to decide these requests. *See* W.D. Mich. LCivR 7.1.

fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of the plaintiff's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party, on the other hand, must present sufficient evidence from which a jury could reasonably find for him. *See Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court then must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the court must view the factual evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

B. Discussion

As a threshold matter, plaintiffs correctly point out that defendants' motion, even if successful, would not operate to close this case as defendants' motion does not address each of plaintiffs' pending counts or each aspect of every count (Pls. Resp., Dkt 189 at 9). Plaintiffs provide some argument in their response about the merits of their other outstanding counts and theories of their case, but this Court has confined its Opinion and Order to only those four issues that defendants have presented for this Court's review (Dfs. Mot., Dkt 180 at 6), quoted *infra.*

1. Whether defendants' actions in listening to certain recorded telephone conversations of its [sic] employees were permissible under the exceptions to prohibition against wiretapping contained in the Wire and Electronic Communications Interception and Interception of Oral Communications Act?

Defendants argue that their actions in listening to certain recorded telephone conversations of their employees were permissible under an exception to the prohibition against wiretapping contained in the Wire and Electronic Communications Interception and Interception of Oral

3

Communications Act, 18 U.S.C. § 2510 *et seq.* Plaintiffs' allegation of a violation of the federal wiretapping statute is contained in Count I of their Third Amended Complaint (Dkt 89 at ¶¶ 83-88).

Section 2510(5), part of the Definitions section of the federal wiretapping statute, creates two exceptions to the prohibition against wiretapping inasmuch as "electronic, mechanical, or other device" is defined to mean any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than* –

> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (*i*) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (*ii*) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;
>
> (b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

18 U.S.C. § 2510(5). Defendants specifically argue that the business-use exception, 18 U.S.C. § 2510(5)(a)(*i*), applies here because the recording equipment installed at the LCSO was provided by a wire or electronic communication service provider — Great Lakes Telecom — and the recording equipment was used in "the ordinary course of business" (Dfs. Mot., Dkt 180 at 16).

In *Adams v. City of Battle Creek*, the Sixth Circuit Court of Appeals examined what is meant when the Act uses the phrase "in the ordinary course of business" to create an exception to the prohibition against wiretapping. 250 F.3d 980, 982 (6th Cir. 2001). The Sixth Circuit held that "ordinary course of business," although not defined in the Act, "generally requires that the use be (1) for a legitimate business purpose, (2) routine, and (3) with notice." *Id.* at 984.

4

Addressing the third requirement, defendants contend that their Employee Conduct policy and Information Technology (IT) resources policy provided sufficient "notice" to plaintiffs that all telephone lines at the LCSO were accessible and recordable and that there was therefore no expectation of privacy in any of the telephone conversations (Dfs. Mot., Dkt 180 at 21). Defendants point out that both plaintiff Kiessel and plaintiff Lamb were involved in drafting these policies (*id.* at 16).

In response, plaintiffs argue that whether there is an expectation of privacy relating to the employees' use of the telephone system is a question of fact given: (1) defendants' specific representation of a "Private Out" line on the LCSO telephones; (2) the IT policy's failure to define or include analog telephone instruments, versus computer and other digital recording systems; (3) the expectation of privacy as to calls intercepted or replayed involving union representatives of the LCSO employees' collective bargaining units; (4) the expectation of privacy as to calls made by members of the general public, especially their calls that were unrelated to departmental business; and (5) the question whether any of the admitted intercepted or repeated phone calls had any relationship to "agency or official business" (Pls. Resp., Dkt 189 at 8).

The Court agrees that defendants have not demonstrated uncontested material facts establishing the propriety of applying the business-use exception here. Even assuming arguendo that the policies were clearly written to provide notice, a genuine issue of material fact exists surrounding the efficacy of the notice and whether a reasonable expectation of privacy was nonetheless created where, contrary to the alleged intent of the LCSO policies, a line on the telephones was labeled as a "Private Out" line. Moreover, defendants wholly failed to address the "legitimate business purpose" and "routine" requirements for applying the statutory exception. In short, defendants have

5

not demonstrated that this statutory exception entitles them to summary judgment of plaintiffs' Count I.

> 2. Whether plaintiffs' separate Fourth Amendment claims must be dismissed since the federal Wire and Electronic Communications Interception and Interception of Oral Communications Act provides [sic, an] exclusive remedy for these claims?

Defendants argue that they are entitled to judgment as a matter of law on plaintiffs' Fourth Amendment claim because the federal wiretapping statute provides the "exclusive remedy" for these claims (Dfs. Mot., Dkt 180 at 22). Plaintiffs' Fourth Amendment claim is contained in Count II of their Third Amended Complaint, where plaintiffs claim that the interception of their telephone conversations constituted an illegal "search and seizure" in violation of their Fourth Amendment rights, actionable through 42 U.S.C. § 1983 (Dkt 89 at ¶¶ 89-96).

The Sixth Circuit in *Adams* considered the relationship between the Fourth Amendment and the federal wiretapping statute. Although the Sixth Circuit determined that the federal wiretapping statute is the "primary vehicle" by which to address violations of privacy interests in the communications field, *Adams*, 250 F.3d at 986, the appellate panel did not hold that the federal wiretapping statute provides the "exclusive" remedy. Rather, as plaintiffs argue, the federal statutory claim may be "coextensive" with a Fourth Amendment claim brought pursuant to 42 U.S.C. § 1983 (Pls. Resp., Dkt 189 at 10 n. 3). The plaintiffs in *Adams* had not argued that the substantive or remedial standards provided by the Fourth Amendment differed from the standards provided by the federal statute, and the Sixth Circuit therefore declined to reach any question of interpretation under the Fourth Amendment on the facts before it. Defendants' bald assertion of exclusivity here similarly fails to obligate this Court to decide the constitutional issue.

3. Whether qualified immunity should be granted as plaintiffs have failed to establish a prima facie case of retaliation under 42 U.S.C. § 1983?

Defendants argue that qualified immunity should be granted as plaintiffs have failed to establish a prima facie case of retaliation (Dfs. Mot., Dkt 180 at 24-35). Plaintiffs allege a First Amendment claim of retaliation, actionable through 42 U.S.C. § 1983, in Count III of their Third Amended Complaint (Dkt 89 at ¶¶ 97-106).

In order to prevail on a civil rights claim under 42 U.S.C. § 1983, plaintiffs must establish that a person acting under the color of state law deprived them of a right secured by the Constitution or laws of the United States. Plaintiffs must also overcome the defense of qualified immunity, which shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

"In determining whether qualified immunity applies, [the Court] employ[s] a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *See Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). The plaintiff has the ultimate burden of proof to establish that the defendant is not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). "Whether qualified immunity is applicable to an official's actions is a question of law." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

Retaliation by a government employer against an individual who exercises his First Amendment rights constitutes a First Amendment violation. *Perry v. McGinnis,* 209 F.3d 597, 604 (6th Cir. 2000). Plaintiffs allege that defendants took adverse employment actions against plaintiffs Kiessel, Lamb, Bankey and Wright in retaliation for their reporting of defendants' illegal

7

eavesdropping activities to law enforcement officials and to the media, and/or in retaliation for plaintiffs' union activities (Dkt 89 at ¶ 99). The adverse employment actions upon which plaintiffs rely include not only the ultimate terminations of employment but also the following acts of "early" retaliation:

    (a)    On April 28, 2008, defendant Oltersdorf retaliated against plaintiffs Lamb and Kiessel by stripping them of the majority of their command authority as Sergeants.

    (b)    On August 7, 2008, defendant Oltersdorf retaliated against plaintiffs Lamb and Kiessel by removing them from the chain of command in the Sheriff's office in his absence from Leelanau County.

    (c)    On October 20, 2008, defendant Oltersdorf stated to plaintiff Bankey that the schedule for the Sheriff's office would be changing and shifts would start when officers arrived at the Sheriff's office and not when they left their homes. Defendant Oltersdorf stated to Bankey in regard to the schedule change that, "You can thank the sergeants and the union for what's going to happen...." Defendant Oltersdorf further informed plaintiff Bankey that he (Bankey) "has no balls" and isn't very smart and further accused Bankey of being a "ring leader" for anti-management forces. Defendant Oltersdorf further threatened Bankey and Kiessel by stating, "all I can say is, watch out."

    (d)    On or about December 5, 2008, defendant Oltersdorf retaliated against plaintiffs Bankey and Wright by passing them over for a promotion to Detective in favor of a less qualified individual, which involved, among other things, a 2.5% pay raise.

    (e)    On December 16, 2008, defendant Oltersdorf retaliated against plaintiffs Kiessel and Bankey again for their writing the letter to the Traverse City Record Eagle by suspending them from duty without pay and benefits for 40 hours.

    (f)    On December 18, 2008, defendant Oltersdorf wrote a letter to the Leelanau County Commissioners disclosing and describing the discipline imposed on Bankey and Kiessel. He further improperly disclosed this employee discipline information to out-of-county sheriffs and prosecutors.

    (g)    On December 22, 2008, defendant Oltersdorf required certain plaintiffs to take a personally drafted oath of office. Said oath was outside the oath

|  | mandated in the Michigan Constitution. Further, defendant Oltersdorf ordered the then suspended defendants [sic] Kiessel and Bankey not to be present at or attend this public event. |
|---|---|
| (h) | On December 22, 2008, defendant Oltersdorf stated in a meeting of the Sheriff's department that if the reporting of suspected eavesdropping to the authorities had not occurred, the shift schedule change would not have to be implemented. Said shift change negatively impacted the County's finances and actually increased overtime for the department. |
| (i) | Defendant Oltersdorf retaliated against plaintiff Bankey in a department meeting by announcing and removing Michael Bankey as the law enforcement division's firearm's [sic] instructor, a position he had held for eight plus years. No explanation was offered or given by defendant Oltersdorf. |

*Id.* at ¶ 63.

In support of their argument that plaintiffs have not made a prima facie case of retaliation, defendants make essentially three arguments. First, defendants argue that the letter Keissel and Bankey wrote to the newspaper before their suspensions addressed only a matter of personal interest to the employees of LCSO, as distinguished from a matter of public concern entitled to constitutional protections (Dfs. Mot., Dkt 180 at 25-28). Defendants also contend that contrary to plaintiffs' allegation that Lamb was terminated under the false pretext that he had exhausted all leave provided under the Family Medical Leave Act, "the evidence clearly shows that the LCSO provided notice to Lamb that his leave will be counted against the twelve (12) week statutory period provided under FMLA" (*id.* at 28-32). Last, with regard to Kiessel's and Wright's terminations, defendants argue that the terminations were not retaliatory but were the only option based upon the facts of the employees' misconduct (*id.* at 32-35).

Defendants' rationale for the employment suspensions and terminations is not so one-sided that defendants must prevail as a matter of law. *See Perry*, 209 F.3d at 604 (observing that whether

9

the protected speech was a "substantial or motivating factor" in the employer's decision to take the adverse action is normally a question of fact for the jury). Rather, there are sufficient facts in the record from which a jury could conclude that the adverse employment actions were motivated by retaliation for protected conduct or protected speech. Moreover, as plaintiffs point out, defendants have not addressed the early adverse employment actions plaintiffs also allege in support of their retaliation claim (Pls. Resp., Dkt 189 at 16). In short, defendants have not demonstrated that they are entitled to summary judgment on Count III.

    4.    Whether all of plaintiffs' claims arising more than ninety (90) days before the filing of their lawsuit are barred by the limitations period under the Michigan Whistleblowers' Protection Act?

In support of their last issue presented, defendants make a one-paragraph argument that plaintiffs' claims of retaliation arising more than ninety days before the filing of their lawsuit are barred by the limitations period of Michigan's Whistleblowers Protection Act, MICH. COMP. LAWS § 15.363(1) ("A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act.") (Dfs. Mot., Dkt 180 at 36). Plaintiffs respond that defendants waived this affirmative defense as to pre-December 3, 2008 acts because (1) they failed to plead this affirmative defense in their original responsive pleadings; (2) they did not plead or raise this affirmative defense in their answer and Affirmative Defenses to the Second and Third Amended Complaints; (3) they did not raise this defense at the Court's status conferences of May 13, 2009 and January 20, 2010; and (4) they have not raised the defense in the documents filed to date (Pls. Resp., Dkt 189 at 31-32).

Although defendants did not include the defense in their original Answer, they did, with plaintiffs' stipulation, amend their Answer to plaintiffs' original complaint to plead the defense

(Stip., Dkt 39; Amend. Affirmative Defenses, Dkt 44 at ¶ 45). Plaintiffs are correct, however, that defendants did not thereafter include the defense in their answers to plaintiffs' Second or Third Amended Complaints.[2] "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Under either the state or federal rules of procedure, defendants were required to preserve their statute of limitations defense in their answers to the Second and Third Amended Complaints. *See* FED. R. CIV. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . [the] statute of limitations."); *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988). *See also* MICH. CT. R. 2.111(F)(3) ("[a]ffirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118"); *Grzesick v. Cepela*, 603 N.W.2d 809, 814 (Mich. Ct. App. 1999) ("It necessarily and logically follows that just as an amended complaint supersedes the original complaint, a party's most recent amended answer supersedes any previously filed responsive pleadings. Consequently, in order to be properly preserved, an affirmative defense must be expressly asserted, or expressly incorporated from a former pleading, in each successive amendment of the original responsive pleading.").

In short, defendants have not demonstrated that they are entitled to summary judgment based on this affirmative defense. "Whatever the motives behind the plaintiffs' and defendant's pleading

---

[2]Since filing this motion, defendants moved for leave to amend their Answers to the Second and Third Amended Complaints to include the defense (Dkt 205). The motion was referred to the Magistrate Judge, who noticed a hearing for December 3, 2010 (Dkt 208), after the December 1, 2010 Settlement Conference.

strategy, to allow the defendant to raise the bar of the statute of limitations after so long a delay. . . and after so many intervening acts had occurred, would make a mockery of the intent and purpose of the statute of limitations." *Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1295 (6th Cir. 1974).

## III. CONCLUSION

For the foregoing reasons, the Court determines that defendants' Motion for Summary Judgment (Dkt 180) is properly denied. An Order will be entered consistent with this Opinion.


DATED: November 23, 2010 /s/ Janet T. Neff
                                                    JANET T. NEFF
                                                    United States District Judge